DeOrchis & Partners, LLP
2355 Main Street
South Chatham, MA 02659
(508) 432-2121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 - 30219 - MAP

DANZAS CORPORATION d/b/a DHL DANZAS AIR & OCEAN,

Plaintiff,

- against -

KROFTA TECHNOLOGIES CORPORATION, PETER R. KIRCHNER, MICHAEL NOYES, NORTHEAST FABRICATORS & MECHANICAL SERVICES, LLC, and DANIEL SHEPARD,

Defendants.

**COMPLAINT**

RECEIPT # 305775
AMOUNT $ 150.00
SUMMONS ISS. ✓
LOCAL RULE 4.1
WAIVER OF SERV.
MCF ISSUED
AO 120 OR 121 ✓
BY DPTY CLK
DATE 11/12/04

Plaintiff, DANZAS CORPORATION d/b/a DHL Danzas Air & Ocean ("DHL"), by and through its attorneys, DeOrchis, Hillenbrand & Wiener, LLP, as and for its Complaint against the defendants, KROFTA TECHNOLOGIES CORPORATION, PETER R. KIRCHNER, MICHAEL NOYES, NORTHEAST FABRICATORS & MECHANICAL SERVICES, LLC, and DANIEL SHEPARD, alleges upon information and belief as follows:

## INTRODUCTION

1. This is an action seeking compensation from the defendants for monies paid by DHL for the movement and storage of various shipments from the United States to a bonded warehouse in the Dominican Republic at the specific direction and with the

1

consent of the defendants. In addition, the plaintiff seeks punitive damages as well as an award of its attorneys' fees and costs.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the plaintiff and the defendants are domiciled, reside and/or have their principal places of business in different states and the jurisdictional amount exceeds the sum or value of US$75,000.00.

3.  In addition, jurisdiction is appropriate in that this is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and, alternatively, 28 U.S.C. § 1391(b).

## PARTIES

6.  At all material times, DHL was and is a business entity organized and existing under the laws of a foreign jurisdiction and with its principal place of business located in Plantation, Florida.

7.  At all times hereinafter mentioned, KROFTA TECHNOLOGIES CORPORATION ("Krofta") was and is a business entity organized and existing under the laws of the State of Massachusetts and with its principal place of business located in Massachusetts.

8.  At all times hereinafter mentioned, NORTHEAST FABRICATORS & MECHANICAL SERVICES, LLC was and is a business entity organized and existing under the laws of the State of Massachusetts and with its principal place of business

located in Massachusetts and is believed to hold all of the common stock, trademarks and patents of Krofta pursuant to a June, 2002 transfer.

9. At all times hereinafter mentioned, PETER R. KIRCHNER was and is an individual residing and domiciled in Dalton, Massachusetts and served or serves as the Treasurer of Krofta.

10. At all times hereinafter mentioned, MICHAEL NOYES was and is an individual residing and domiciled in Dalton, Massachusetts and served or serves as the Vice-President of Krofta.

11. At all times hereinafter mentioned, DANIEL SHEPARD was and is an individual residing and domiciled in Richmond, Massachusetts and served or serves as the President of Krofta.

## FACTS AND CLAIMS

12. Krofta is a manufacturer of water and wastewater treatment equipment used in industrial, municipal and agricultural applications.

13. In or around 2003, Krofta contracted with the government of the Dominican Republic to provide and install a water filtration system which included site preparation, manufacturing of required equipment and the actual construction of the water filtration system in the Dominican Republic.

14. Subsequently, Krofta hired DHL to provide carriage and freight forwarding services associated with the movement of the water filtration equipment from the United States to the Dominican Republic.

15. In or around the first half of 2003, and after Krofta contracted to provide a water filtration system to the Dominican Republic, preparation of the site was allegedly delayed.

16. As a result of the alleged delay, DHL was informed by Krofta that the water filtration equipment which was being manufactured at Krofta's facility in the United States could not immediately be installed at the site.

17. In May, 2003, Krofta inquired of DHL as to whether a bonded warehouse was available in the Dominican Republic for the receipt of the water filtration equipment it was manufacturing and Krofta sought an estimate of the prospective costs for such storage.

18. In a subsequent exchange of correspondence, DHL provided Krofta with the storage rates for the bonded warehouse and answered various questions posed by Krofta such as the size of the warehouse and the maximum period of storage.

19. On all occasions and at all times, the defendants affirmed their understanding and agreement that all of the charges associated with the transportation of the water filtration equipment including taxes, fees, duties and customs charges were for their account.

20. On all occasions and at all times, the defendants affirmed their understanding and agreement that all of the charges associated with the bonded warehouse were for their account.

21. In or around July, 2003, Krofta began shipping the water filtration equipment with DHL from the United States to the Dominican Republic via the State of Florida for storage in the bonded warehouse.

22. Based upon their business relationship and as an accommodation to Krofta, DHL paid those storage costs including the insurance costs, taxes, fees and duties invoiced by the bonded warehouse and incurred for the purpose of receiving and storing Krofta's water filtration equipment.

23. With each shipment, and unbeknownst to DHL, the defendants were drawing down monies per a Letter of Credit issued by the Bank of America and related to Krofta's contract with the government of the Dominican Republic.

24. In or around September, 2003, DHL advised Krofta of the mounting storage costs in writing and sought an explanation from Krofta as to why the water filtration equipment was being forwarded in light of the "huge storage costs" accruing in the Dominican Republic.

25. In or around September, 2003, DHL offered to work with Krofta to develop an alternate and less costly solution.

26. Despite DHL's advices and concern, the defendants reiterated their desire to continue the shipments allegedly for the purpose of freeing up space in their facilities in the United States.

27. In or around September, 2003 and at all times thereafter, the defendants continued to confirm their understanding of the mounting costs associated with the movement and storage and their obligation to pay for the same.

28. In reliance on Krofta's representations, DHL continued to timely pay the storage charges associated with the water filtration equipment including freight, storage charges, insurance costs, taxes, fees, and duties.

29. DHL billed its freight and the storage charges invoiced by the bonded warehouse including all insurance costs, taxes, fees, and duties to Krofta.

30. Although duly demanded, the defendants have failed and refused to reimburse DHL for its freight and the charges invoiced by the bonded warehouse including the insurance costs, taxes, fees and duties.

## FIRST CAUSE OF ACTION

(Breach of Contract - Krofta Technologies Corporation)

31. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

32. By way of its written communications and the oral representations of its officers and directors, Krofta invited DHL to provide price quotations for the storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

33. DHL provided Krofta with a price quote for such storage.

34. By way of its written communications and the oral representations of its officers and directors, Krofta accepted the price quote proffered by DHL.

35. Krofta further acknowledged its acceptance of the price quote by tendering its water filtration equipment to DHL with instructions to transport the same to the bonded warehouse located in the Dominican Republic.

36. DHL presented Krofta with invoices reflecting the costs DHL incurred in connection with the movement and storage of the water filtration equipment in a bonded warehouse located in the Dominican Republic, however Krofta so far as failed and refused to pay the same.

37. DHL fully performed all of its obligations under the contract existing between it and Krofta.

38. Krofta's failure and refusal to pay the costs associated with movement and storage of the water filtration equipment in a bonded warehouse is a breach of its agreement with DHL.

39. By reason of Krofta's failure to pay the storage costs, DHL has incurred and continues to incur damages.

## SECOND CAUSE OF ACTION

(Breach Of Contract - Krofta Technologies Corporation)

40. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

41. DHL agreed to transport and deliver the water filtration equipment to the government of the Dominican Republic pursuant to all of the terms and conditions contained in DHL's invoices.

42. DHL received and transported the water filtration equipment to the Dominican Republic.

43. DHL was informed by Krofta that because the consignee was unprepared to accept the water filtration equipment, it would have to be placed in a bonded warehouse.

44. Pursuant to the terms and conditions of its invoices, DHL is entitled to receive reimbursement for all of the costs it incurred in storing the water filtration equipment.

45. Although duly demanded, Krofta has failed and refused to provide reimbursement to DHL.

46. DHL fully performed all of its obligations under the contract existing between it and Krofta.

47. Krofta's failure and refusal to pay the costs associated with the movement of the water filtration equipment and its storage in a bonded warehouse is a breach of its contract with DHL.

48. By reason of Krofta's failure to pay the storage costs, DHL has incurred and continues to incur damages.

### THIRD CAUSE OF ACTION

(Quantum Meruit - All Defendants)

49. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

50. The defendants desired to store the water filtration equipment in a bonded warehouse in the Dominican Republic.

51. DHL assisted the defendants in locating a bonded warehouse and arranging for the movement of the water filtration equipment from the United States into the bonded warehouse.

52. Acting as the defendants' freight forwarder and based on their business relationship, DHL paid the storage and associated costs invoiced by the bonded warehouse and passed the costs onto the defendants for reimbursement.

53. Although duly demanded, the defendants have failed and refused to pay DHL for the costs it incurred in shipping the water filtration equipment and storing it in a bonded warehouse in the Dominican Republic.

54. The defendants' failure and refusal to pay the costs associated with the movement of the water filtration equipment and its storage in a bonded warehouse is without basis.

55. The storage of the water filtration equipment in a bonded warehouse was necessary and beneficial to the defendants because, and among other things, it allowed the defendants to draw down on a Letter of Credit and were costs the defendants knew or should reasonably have recognized were for their account.

56. By reason of the defendants' failure to pay the storage costs, DHL has incurred and continues to incur damages.

## FOURTH CAUSE OF ACTION

(Negligent Misrepresentation - All Defendants)

57. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

58. The defendants negligently misrepresented to DHL that they would reimburse DHL for all the costs associated with the storage of the water filtration equipment in a bonded warehouse.

59. DHL reasonably relied, to its detriment, on the negligent misrepresentations of the defendants in paying and continuing to pay the costs associated with the storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

60. By reason of the defendants' negligent misrepresentations, DHL has incurred and continues to incur damages.

### FIFTH CAUSE OF ACTION

(Intentional Misrepresentation - All Defendants)

61. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

62. The defendants intentionally misrepresented that they would reimburse DHL for the costs associated with the movement of the water filtration equipment and its storage in a bonded warehouse in the Dominican Republic.

63. DHL reasonably relied, to its detriment, on the intentional misrepresentations of the defendants in paying and continuing to pay the costs associated with the movement of the water filtration equipment and its storage in a bonded warehouse in the Dominican Republic.

64. By reason of the defendants' intentional misrepresentations, DHL has incurred and continues to incur damages.

### SIXTH CAUSE OF ACTION

(Contractual Indemnity - Krofta Technologies Corporation)

65. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

66. Krofta contracted with DHL to move the water filtration equipment from the United States into a bonded warehouse located in the Dominican Republic.

67. DHL fully performed Krofta's instructions and invoiced Krofta for the costs of the movement and storage which invoices Krofta has failed and refused to pay.

68. DHL fully performed pursuant to the contract existing between it and Krofta.

69. Pursuant to the terms and conditions of the contract existing between DHL and Krofta, DHL is entitled to, among other things, indemnity for the costs incurred in connection with the storage of the water filtration equipment.

## SEVENTH CAUSE OF ACTION

(Common Law Indemnity - All Defendants)

70. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

71. The defendants instructed DHL to move the water filtration equipment from the United States into a bonded warehouse located in the Dominican Republic.

72. DHL fully performed the defendants instructions.

73. Thereafter, costs associated with the movement and storage of the water filtration equipment were incurred by the defendants.

74. The defendants were legally obligated to pay for the movement and storage costs.

75. The bonded warehouse asserted a claim against DHL in its capacity as an agent of the defendants for payment of the storage costs which DHL was forced to pay.

76. The defendants to date have refused to indemnify DHL for the monies it expended in making payment of the bonded warehouse storage costs as agent for the defendants.

77. DHL has incurred and continues to incur substantial costs, losses, liabilities, expenses and attorneys' fees as a result of the defendants' failure to reimburse DHL.

78. DHL is entitled to common law indemnity from the defendants for all costs, losses, liabilities, expenses and attorneys' fees it has incurred as a result of the defendants' storage of the water filtration equipment in a bonded warehouse.

## EIGHTH CAUSE OF ACTION

(Restitution - All Defendants)

79. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

80. At the defendants' specific request, DHL paid for the costs associated with the storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

81. The services and monies expended by DHL benefited the defendants in that, among other things, it allowed the defendants to perform their contract with the government of the Dominican Republic and allowed the defendants to draw monies down from a Letter of Credit.

82. The defendants' retention of the benefits of DHL's services and expenditures would unjustly enrich the defendants as they have not paid for these benefits.

83. DHL is entitled to restitution from the defendants for all costs, losses, liabilities, expenses and attorneys' fees it has incurred as a result of the storage of the water filtration equipment in a bonded warehouse.

## NINTH CAUSE OF ACTION

(Affirmative Promissory Estoppel - Krofta Technologies Corporation)

84. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

85. Krofta represented to DHL that it would be responsible for all of the costs associated with the movement and storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

86. Krofta knew or should reasonably have recognized that DHL would rely on Krofta's representations in agreeing to pay the bonded warehouse directly and in seeking subsequent reimbursement from Krofta.

87. DHL reasonably relied on Krofta's representations in agreeing to pay the bonded warehouse directly and in seeking subsequent reimbursement from Krofta.

88. Krofta misrepresented its willingness to pay the costs associated with the storage of the water filtration equipment.

89. As a result of Krofta's misrepresentations, DHL has incurred and continues to incur damages.

## TENTH CAUSE OF ACTION

(Declaratory Judgment Pursuant to 28 U.S.C. § 2201
and Fed. R. Civ. P. 57 - All Defendants)

90. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

91. As set forth herein, an actual controversy as defined by 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 exists as to whether the defendants are obligated to reimburse

DHL for the costs DHL paid and the costs it has incurred in connection with the storage of the water filtration equipment in a bonded warehouse.

92. A declaratory judgment as to the defendants' obligations would free the parties from the uncertainty and insecurity with respect to their respective rights, duties, status and other legal relations.

93. DHL is entitled to reimbursement of the monies it paid and which it has incurred in connection with the movement of the water filtration equipment and its storage in a bonded warehouse in the Dominican Republic.

### ELEVENTH CAUSE OF ACTION

(Fraud - All Defendants)

94. The plaintiff re-adopts and re-alleges all of the paragraphs above as if fully set forth herein, and in addition alleges the following:

95. Beginning in or around 2003, Northeast Fabricators, Peter R. Kirchner, Michael Noyes, and Daniel Shepard employed Krofta for the improper purpose of misleading or defrauding DHL.

96. Beginning in or around 2003, Krofta was a mere instrumentality of its shareholders, and Krofta was used for the improper purpose of entering into contracts with DHL and with the government of the Dominican Republic which contracts the defendants knew or should reasonably have known they were unable to perform.

97. In multiple conversations and in written communications occurring in approximately May, 2003 through March, 2004, the defendants falsely represented and/or allowed representations that they knew to be false to be made that Krofta would

be responsible for all of the costs incurred in connection with the storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

98. By way of example, on May 22, 2003, July 14, 2003, January 28, 2004, and March 5, 2004, the defendants acknowledged or caused to be acknowledged in writing, statements that Krofta was responsible for and would make payment of the costs associated with the storage of the water filtration equipment in a bonded warehouse in the Dominican Republic.

99. The defendants knew that their representations were false in as much as Krofta has never tendered any payments to DHL for the storage costs.

100. The defendants knew that their representations were false in that Krofta was financially unable to pay for the storage costs.

101. The defendants made such representations for the purpose of, among other things, deceiving DHL into paying the storage costs so as to allow Krofta to perform its contract with the government of the Dominican Republic which performance allowed the defendants to draw down on a Letter of Credit.

102. The defendants improperly appropriated the funds drawn down from the Letter of Credit for their own personal gain or for the benefit of other business entities which they control or otherwise maintain an interest.

103. DHL relied on the defendants representations and believed them to be true.

104. The defendants were aware that DHL relied on their representations and were aware that DHL believed their representations to be true.

105. The defendants' actions were willful and wanton and undertaken with malice.

106. By reason of the defendants' failure to pay the costs of the movement and storage of its water filtration equipment, DHL has incurred and continues to incur damages.

## JURY DEMAND

The plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff prays:

a. That a judgment be entered in favor of the Plaintiff awarding actual damages in as near as can now be determined in an amount in excess of $650,000.00 as well as prejudgment and post-judgment interest;

b. That the Plaintiff recover from the defendants jointly and severally, its attorneys' fees, costs and expenses associated with the commencement and prosecution of this action;

c. That the Plaintiff recover an award of exemplar damages in an amount determined by the trier of fact to be appropriate; and

d. That Plaintiff receive such other and further relief as this Court may deem just and necessary.

Dated: Chatham, Massachusetts
November 8, 2004

DeOrchis & Partners, LLP
Attorneys for Plaintiff

By: _____
David J. Farrell, Jr., Esq.
BBO #559847
2355 Main Street
P.O. Box 186
S. Chatham, MA  02659
(508) 432-2121
(508) 246-2196 - Fax

- Of Counsel -

John K. Fulweiler, Esq.
DeOrchis & Partners, LLP
61 Broadway, 26th Floor
New York, NY 10006
212-344-4700
212-422-5299 - Fax

17