UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

C.A. No. 04-30219-MAP

DANZAS CORPORATION D/B/A DHL
DANZAS AIR & OCEAN,
    Plaintiff

v.

KROFTA TECHNOLOGIES
CORPORATION; PETER R. KIRCHNER;
MICHAEL NOYES; NORTHEAST
FABRICATORS & MECHANICAL
SERVICES, LLC; AND DANIEL
SHEPARD,
    Defendants

## MEMORANDUM IN SUPPORT OF DEFENDANT SHEPARD'S MOTION FOR SUMMARY JUDGMENT

Defendant Daniel Shepard, for his Memorandum in Support of his Motion for Summary Judgment, states as follows:

### Introduction

In this action, Plaintiff Danzas Corporation, d/b/a DHL Danzas Air & Ocean ("DHL") seeks to recover from Krofta Technologies Corporation ("Krofta") fees for storage of equipment shipped by Krofta and stored in the Dominican Republic. DHL raises a variety of baseless claims against Krofta's former president, Daniel Shepard ("Shepard"). There is no basis for Mr. Shepard's personal liability in what is purely a business dispute between a manufacturer and a shipper.

0504251712

1

## Statement of Facts

Shepard incorporates herein the undisputed facts set forth in his Local Rule 56.1 Statement of Facts ("SF ¶ ___"), filed contemporaneously with this Memorandum. A summary of these facts is as follows:

1. Daniel Shepard was the President of Krofta Technologies Corporation ("Krofta") from June, 2002 until he resigned effective January 23, 2004. His last day at Krofta was January 16, 2004. He was President in name only; Krofta was controlled by NorthEast Mechanical Fabricators in which he was a minority partner. (SF ¶ 2).

2. Daniel Shepard's professional background and experience is in sales and marketing. While President of Krofta, his primary objective was to sell the company. (SF ¶ 3).

3. In May, 2003, Daniel Shepard signed a DHL credit application, which had a limit of $10,000, and which included a personal guaranty ("Application"). A true and correct copy is attached to the Shepard Affidavit as Exhibit A. (SF ¶ 4).

4. When Daniel Shepard resigned from Krofta, his agreement with the company was that the Application would be replaced and that Krofta and NorthEast would indemnify him for all costs associated with the Application. His understanding is that in February 2004 Krofta and its principals submitted a new credit application to DHL. Daniel Shepard is advised that the DHL credit application, a copy of which is attached to Mr. Shepard's affidavit as Exhibit B, was produced by Krofta in this litigation. (SF ¶ 5).

5. Through summer and fall of 2003, the Krofta equipment was shipped by DHL to the Dominican Republic. While Daniel Shepard was at Krofta, virtually all of the

communications with DHL on the subject of shipping or storage were through Neesha Coles, an office clerk at Krofta. (SF ¶ 6).

6. Daniel Shepard did not speak or communicate with any representative of DHL about the shipping of the Krofta equipment to the Dominican Republic, except on perhaps one or two occasions. His best recollection of these telephone calls is that, sometime in the late Summer or Fall of 2003, DHL asked that the Krofta account be made current, as precondition to any further shipments. (SF ¶ 7).

7. At that time, the balances on the DHL account were in the range of $15,000 to $30,000, attributable to the shipment of equipment to the Dominican Republic. In response to DHL's requests, any outstanding balances were paid and shipments continued. (SF ¶ 8).

8. Daniel Shepard did not speak or communicate with any representative of DHL about storage of the Krofta equipment in the Dominican Republic. He was aware of Krofta's need for such storage to be arranged. His understanding was that Ms. Coles was handling the issue of storage on Krofta's behalf. (SF ¶ 9).

9. When Daniel Shepard left Krofta in mid-January, 2004, the DHL account was in good standing. There was either no balance outstanding or a small balance. He does not believe that he saw, or was made aware of, any invoices for storage of the equipment in the Dominican Republic. (SF¶ 10). In this litigation, DHL produced copies of its invoices for storage, the earliest of which are dated in March 2004. (SF¶ 10).

10. Daniel Shepard did not make any statements or assurances of any kind to any representative of DHL about storage of Krofta equipment in the Dominican Republic, or Krofta's payment for such storage. He never told any representative of DHL, in writing

or otherwise, that Krofta would make payment for storage of the equipment in the Dominican Republic. (SF ¶ 11).

11. In Daniel Shepard's dealings with DHL and the Dominican Republic contract, he acted solely on behalf of Krofta as President. The only exception was his personal guaranty made as part of the credit application to DHL, which was capped at $30,000 and extinguished in January or February, 2004. (SF ¶ 12).

12. Daniel Shepard did not receive any personal benefit from any of Krofta's dealings with DHL or the Dominican Republic contract, except compensation as an officer and principal of Krofta. (SF ¶ 12).

## ARGUMENT

### A. The Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). As discussed in more detail below, it is not disputed that Mr. Shepard did not receive any personal benefit from DHL's storage of Krofta equipment in the Dominican Republic, nor that he made any misrepresentations as to storage or payment. The claims against him must be dismissed.

### B. The Various Counts Against Mr. Shepard All Fail For Lack of at Least One Essential Element

All of DHL's counts against Shepard fail for lack of at least one essential element.

## QUANTUM MERUIT AND RESTITUTION
## (COUNTS III AND VIII)

By Count III, DHL asserts a claim for *quantum meruit*, alleging a basis that "storage" of the Krofta equipment in the Dominican Republic was "beneficial to the Defendants" by, among other things, allowing Krofta to draw down on a letter of credit. (DHL Complaint, at ¶ 55). A claim based on *quantum meruit* has two elements: "that the plaintiff confer a measurable benfit upon the defendant and that the plaintiff expected payment from the defendant." *Bolen v. Paragon Plastics, Inc.*, 747 F.Supp. 103, 106 (D.Mass.1990).

Mr. Shepard is sued in his personal capacity, along with his former employer, Krofta. The storage of the Krofta equipment in the Dominican Republic, which is the basis of DHL's claims, did not personally benefit Shepard. Rather, the benefit flowed directly to Krofta, which had in fact hired DHL for the storage. For lack of any such benefit flowing to Mr. Shepard personally, DHL cannot recover under a *quantum meruit* theory against Mr. Shepard.

The second element of a *quantum meruit* claim requires that plaintiff expected payment from the defendant. "[R]ecovery is denied if the plaintiff conferred a benefit expecting compensation from one person, then seeks restitution from a second person." 747 F.Supp. at 107. Here, DHL expected compensation from Krofta, and now sues Mr. Shepard. Accordingly, Count III must be dismissed with prejudice as to Mr. Shepard.

The basic principle of restitution, under Massachusetts law, is that "a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029 (1985), *quoting* Restatement of Restitution §1 (1937); *see generally, Keller v. O'Brien*, 425 Mass. 774,

778, 683 N.E.2d 1026 (1997). As with DHL's *quantum meruit* claim, its restitution claim against Mr. Shepard fails because (1) Mr. Shepard was not unjustly enriched in any way by DHL, and (2) DHL did not expect compensation from Mr. Shepard. *See, Paragon Plastics*, 747 F.Supp. at 107. Count VIII of DHL's complaint against Mr. Shepard, based on restitution, must be dismissed.

### INDEMNITY (COUNT VII)

By Count VII, DHL seeks indemnity from Mr. Shepard. There are generally three sets of circumstances which will give rise to a right to indemnity: an express agreement, an implied contractual right arising from the nature of the relationship of the parties, and a tort-based right where the party seeking indemnity is derivatively or vicariously liable, but not at fault. *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d 1, 2-3 (1st Cir. 1982); *see generally, Callahan v. A.J. Welch Equipment Corp.*, 36 Mass.App.Ct. 608, 613, 634 N.E.2d 134, (1994); *Steward v. Roy Brothers, Inc.*, 358 Mass. 446, 458-59, 265 N.E.2d 357 (1970).

None of the circumstances recognized as giving a right to indemnity exist here. DHL is not derivatively or vicariously liable for any torts; there is no relationship to give rise to implied indemnity, between Mr. Shepard personally and a vendor to his employer, Krofta; and there is no agreement to indemnify. DHL's claim for indemnity, Count VII, must be dismissed.

### MISREPRESENTATION (COUNTS IV, V, XI)

DHL brings three counts against Mr. Shepard based on misrepresentation: negligent misrepresentation (Count IV), intentional misrepresentation (Count V), and fraud (Count XI). The gist of the negligent misrepresentation claim is that Mr. Shepard

made statements to DHL to the effect that Mr. Shepard would reimburse DHL for storage costs incurred on Krofta's behalf, or that Krofta would reimburse DHL for costs incurred for storing Krofta's equipment. (Complaint, ¶ 58). The basis for DHL's intentional misrepresentation is basically the same. (Complaint, ¶ 62). In its fraud count, DHL alleges a misuse of the corporate form to defraud DHL, including false representations that Krofta would pay or make payment for storage of Krofta equipment (*e.g.*, Complaint, ¶98).

The misrepresentations claims fail for several reasons. First and foremost, Mr. Shepard did not make any representations of any kind to DHL on the subject of payment for storage of Krofta equipment in the Dominican Republic. (SF ¶ 11). Mr. Shepard left Krofta in January, 2004, shortly after the shipments of the Krofta equipment had been completed, but before DHL had sent any invoices for storage costs. While Mr. Shepard was at Krofta, the communications on Krofta's behalf on the subject of shipping and storage were handled largely by Krofta's Neesha Coles. (SF ¶ 6&7). The extent of Mr. Shepard's communications with DHL were one or two phone calls on the subject of shipment of equipment to the Dominican Republic. For lack of any misrepresentation, DHL's claims based on misrepresentation (Counts IV, V, and XI) must be dismissed.

DHL's misrepresentation claims against Mr. Shepard fail for other reasons as well. A negligent misrepresentation claim requires that any actionable statement be made by a defendant in the course of its business. *Rodowicz v. Massachusetts Mutual Life Insurance Co.*, 279 F.3d 36, 42 (1st Cir. 2002), citing *Fox v. F & J Catozzi Corp.*, 41 Mass.App.Ct. 581, 587, 672 N.E.2d 547 (1996). Mr. Shepard, in his personal capacity,

was not in the business of providing information so as to meet the prerequisite for this claim.

The elements of misrepresentation are: "a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Rodowicz*, 279 F.3d at 42, *quoting Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991). Statements which are promissory in nature are not actionable on a misrepresentation theory simply because the promise is unfulfilled; in addition to the other elements, the plaintiff must show that when the promise was made, the speaker then had no intention of carrying out the promise. *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 709, 563 N.E.2d 188 (1990). Mr. Shepard made no representations with respect to payment for storage. (SF¶ 11). To the extent DHL advances a claim relating to shipping, no false statements were made by Mr. Shepard, because any balances owed DHL by Krofta based on shipping were paid, or reduced to small amounts by the time Mr. Shepard left. (SF¶ 8, 10).

## DECLARATORY JUDGMENT (COUNT X)

Finally, DHL names Mr. Shepard as a defendant in a declaratory judgment count, seeking the declaration that it is entitled to a right of reimbursement against Mr. Shepard. As discussed above, there is no right of reimbursement for DHL against Mr. Shepard personally, nor any other basis for personal liability. Accordingly, Count X, for declaratory judgment, must be dismissed as to Mr. Shepard.

## Conclusion

For all of the foregoing reasons, all counts of DHL's complaint against Mr. Shepard must be dismissed with prejudice.

DEFENDANT DANIEL SHEPARD

By: _____
Paul S. Weinberg, Esq., BBO No. 519550
John E. Garber, Esq., BBO No. 635313
Weinberg & Garber, P.C.
71 King Street
Northampton, MA 01060
(413) 582-6886
fax (413) 582-6881

## CERTIFICATE OF SERVICE

I, John E. Garber, Esq., hereby certify that on this 19th day of May, 2005, I served a copy of the foregoing by First Class Mail to counsel.
Subscribed under penalties of perjury.

_____
John E. Garber, Esq.